UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TRUE GENTLEMEN'S JERKY, INC., a California corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>1K1V TGJ HOLDINGS, LLC, a Delaware limited liability company; ONE THOUSAND & ONE VOICES MANAGEMENT, LLC, a Delaware limited liability company; 1K1V STORMBERG, LLC, a Delaware limited liability company; HENDRIK JORDAAN, an individual, and DOES 1-10, inclusive,<br><br>        Defendants. | Case No:  21-cv-04073 SBA<br><br>**ORDER GRANTING MOTION TO DISMISS COMPLAINT** |

Plaintiff True Gentlemen's Jerky, Inc. ("True"), brings the instant action against Defendants 1K1V TGJ Holdings, LLC ("1K1V TGJ"); One Thousand & One Voices Management, LLC ("OTOV"); 1K1V Stormberg, LLC ("1K1V Stormberg"); and Hendrik Jordaan ("Jordaan") (collectively, "Defendants"). Pending is Defendants' motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The matter is suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b). For the reasons stated below, the motion is granted.

## I.     BACKGROUND

### A.     1K1V TGJ'S INVESTMENT IN TRUE

True is a startup company that sell meat snacks, including beef jerky and biltong. Compl. ¶ 12, Dkt. 1, Ex. A. 1K1V TGJ is owned and controlled by OTOV, a private equity fund based in South Africa. Id. ¶ 15. OTOV is run by Jordaan and operates through various corporate entities, including 1K1V TGJ and 1K1V Stormberg. Id. ¶¶ 15-16.

In September 2017, 1K1V TGJ made a seed-capital investment of $900,000 in True. Id. ¶ 19.  Over the next two years, 1KIV TGJ made three additional investments to fund True's growth, bringing its total investment to $3 million.  Id. ¶ 20.

By virtue of its investments, 1K1V TGJ was given the right to appoint one of the five members on True's Board of Directors.  Id. ¶ 32.  It appointed Dave Evans ("Evans"), CEO of BOS Brands, a South African iced tea company.  Id.  True alleges, on information and belief, that Defendants selected Evans because they believed he would elevate 1K1V TGJ's interests over True's interests.  Id. ¶ 33.  The other four board members consist of True's CEO, Jess Thomas ("Thomas"), and three individuals designated by him.  Id. ¶ 34.

Pursuant to True's Shareholders' Agreement, the board member designated by 1K1V TGJ has the authority to veto certain transactions, including the incurring of indebtedness in excess of $75,000.  Id. ¶ 35.

**B.     OTOV AND TRUE'S INVESTMENTS IN STORMBERG**

In December 2018, OTOV and True co-invested in Stormberg Foods ("Stormberg"), a third-party biltong manufacturer.  Id. ¶ 22.  Each party invested $600,000 in exchange for 15% of Stormberg's Class A membership units.  Id.  True funded its investment through a loan from 1K1V TGJ.  Id.  OTOV's investment necessitated the formation of a new company, 1K1V Stormberg, to which OTOV transferred its shares.  Id. ¶ 23.

Pursuant to an Operating Agreement executed by the parties, True (and 1K1V Stormberg) had the right to participate pro rata in any new equity securities issuances by Stormberg.  Id. ¶ 24.  This preemptive right would allow True to maintain its ownership interest in Stormberg, without dilution.  Id.  The Operating Agreement required Stormberg to provide notice of any issuance and thirty days for True to exercise or waive its right.  Id.

In or about June 2019, negotiations were underway for 1K1V TGJ to invest $1 million in True.  Id. ¶ 25.  Around the same time, negotiations were underway for 1K1V Stormberg to make a follow-on investment in Stormberg, which would necessitate the issuance of new equity securities with a value of $752,000.  Id. ¶¶ 26-30.  According to True, Defendants initially concealed this follow-on investment in Stormberg.  Id.

One day before the proposed funding date, Stormberg's owner, Gary Moorcroft ("Moorcroft"), called Thomas to demand that True waive its timely notice and preemption rights. Id. When Thomas advised that True intended to take the full thirty days to which it was entitled to consider its options, Moorcroft—purportedly acting under Defendants' "direction, influence and control"—threatened that, if True did not waive its rights, Defendants would "'pull the plug'" on both the investment in Stormberg and the $1 million investment in True. Id. True alleges that, "[w]ith no other options and no time to spare," it executed a waiver under duress. Id. As a result of 1K1V TGJ's follow-on investment, True's ownership interest in Stormberg was diluted. Id.

      C.      THE PURPORTED "TAKEOVER BID"

In early 2020, True required additional financing to "remain a viable business." Id. ¶¶ 37-38. It is alleged that Defendants sought to exploit True's position by, among other things, "slow-playing negotiations on the promise of favorable terms." Id. According to True, Defendants employed a strategy to "build[] leverage" until such time as it would be forced to accept an unfavorable offer. Id. Defendants allegedly "led [True] to believe" that additional financing at a fair market rate would be forthcoming. Id. ¶¶ 38-39. In pursuit of this investment, True met certain demands, such as firing a staff member, reducing management salaries, and increasing prices. Id.

True alleges that the offer eventually presented by Defendants was a "takeover bid." Id. ¶ 40. Defendants intended to complete a "hostile takeover," and once in control, "to fire all the founders [of True] and oust them from the very company they had built." Id. ¶ 41. The negotiations "quickly soured." Id. ¶ 42. Honoring its contractual and fiduciary obligations, True presented 1K1V TGJ's proposal to its board. Id. ¶ 43. All board members, including Evans, expressed reservations about the terms and urged management to find alternative financing. Id.

      D.      FINANCING OFFER FROM KING'S HAWAIIAN

In April 2020, another food products company, King's Hawaiian Holding Co. Inc. ("King's Hawaiian"), submitted an offer to invest in True. Id. ¶ 45. According to True, the

terms proposed were more favorable than those proposed by Defendants and better reflected a fair-market investment. Id. However, Defendants sought to undermine and thwart the King's Hawaiian offer. Id. ¶ 46.

"As a first shot across the bow," 1K1V TGJ sent a letter to True threatening litigation. Id. ¶ 47. The letter asserted that True's board owed duties to 1K1V TGJ and that True had an obligation to reject the King's Hawaiian offer. Id. True alleges, on information and belief, that Defendants lobbied Evans to reject the King's Hawaiian proposal. Id. ¶ 48. In the days leading up to the board's vote, Evans circulated an email that "parroted" certain of Defendants' assertions. Id.

Defendants "then escalated their efforts by making direct threats to King's Hawaiian" regarding litigation. Id. ¶ 49. True characterizes this as a "transparent attempt to scare off a potential investor that intended to provide life-saving capital." Id. Citing the threat of litigation, King's Hawaiian withdrew its proposal. Id. ¶ 50.

### E. THE INSTANT ACTION

True then filed the instant action against Defendants, alleging claims for: (1) Breach of Fiduciary Duty; (2) Fraudulent Concealment & Misrepresentation; (3) Intentional Interference with Prospective Economic Relations (based on the failed King's Hawaiian proposal); (4) Negligent Interference with Prospective Economic Relations (based on the failed King's Hawaiian proposal); (5) Intentional Interference with Prospective Economic Relations (based on the dilution of True's equity interest in Stormberg); (6) Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing (based on dilution of True's equity interest in Stormberg); and (7) Declaratory Relief.

## II. LEGAL STANDARD

Rule 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the

nature of the claim, but also grounds on which the claim rests.'" Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013) (quoting in part Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

In assessing the sufficiency of the complaint, courts must accept its factual allegations as true and construe the pleadings in the light most favorable to the nonmoving party. Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are "not entitled to the assumption of truth." Iqbal, 556 U.S. at 678, 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Absent a clear showing that amendment would be futile, at least one chance to amend a deficient complaint should be given. Nat'l Council of La Raza v. Cegavske, 800 F.3d 1032, 1041-42 (9th Cir. 2015).

## III. DISCUSSION

Defendants move to dismiss the Complaint on the grounds that True: (1) fails to allege facts to support its claims; (2) lumps Defendants together without individualized allegations of wrongdoing; and (3) fails to allege facts to support punitive damages.

### A. BREACH OF FIDUCIARY DUTY

True's first claim is for breach of fiduciary duty. Compl. ¶¶ 51-55. The elements of a claim for breach of fiduciary duty are "the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." Pierce v. Lyman, 1 Cal. App. 4th 1093, 1101 (1991). For a fiduciary duty to arise, a defendant "must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." City of Hope Nat'l Med. Ctr. v. Genentech,

Inc., 43 Cal. 4th 375, 386 (2008) (quotation marks and citation omitted). Here, True fails to allege facts supporting the existence of a fiduciary relationship.

"[I]t is established that absent special circumstances … a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender." Oaks Mgmt. Corp. v. Superior Court, 145 Cal. App. 4th 453, 466 (2006) (and cases cited therein); see also Okura & Co. (Am.) v. Careau Grp., 783 F. Supp. 482, 494 (C.D. Cal. 1991) ("Generally, the lender-borrower relationship is not a fiduciary relationship."). "'A commercial lender is entitled to pursue its own economic interests in a loan transaction. This right is inconsistent with the obligations of a fiduciary which require that the fiduciary knowingly agree to subordinate its interests to act on behalf or for the benefit of another.'" Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 883 (N.D. Cal. 2010) (quoting Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1093 n.1 (1991)). Accordingly, absent special circumstances, the borrower/lender relationship between True and 1K1V TGJ did not give rise to a fiduciary duty.

True acknowledges the general rule that a lender owes no duty of care when it does not exceed the scope of its role as a mere money lender. Opp'n at 10 (citing Nymark, 231 Cal. App. 3d at 1098). It argues, however, that where the parties are "joint venturers rather than lender and borrower," or the lender "exerts undue control [over] the borrower," the law imposes a fiduciary duty to act with reasonable care not to undermine or exploit the interests of their business partner. Id. (quoting Okura, 783 F. Supp. at 494-495). True claims that special circumstances were present here, such that Defendants acted outside the ordinary scope of a lender. Id. at 9-10. As discussed below, this argument is unpersuasive.

First, True contends it and 1K1V Stormberg were joint venturers in Stormberg. The facts alleged simply do not establish a joint venture. See Simmons v. Ware, 213 Cal. App. 4th 1035, 1053 (2013) ("An essential element of a partnership or joint venture is the right of joint participation in the management and control of the business. Absent such right, the mere fact that one party is to receive benefits in consideration of services rendered or for capital contribution does not, as a matter of law, make him a partner or joint venturer.").

The Complaint alleges only that 1K1V Stormberg and True (through a loan from 1K1V TGJ) invested in Stormberg. This is plainly insufficient.[1]

Second, True asserts (without further elaboration) that 1K1V TGJ had authority, through the Shareholder Agreement, "to unilaterally direct [True's] financing efforts." Opp'n at 9-10. True refers to 1K1V TGJ's right to appoint a board member with the power to veto financing proposals in excess of $75,000. As noted in the case primarily relied upon by True, however, this does not constitute undue control. Okura, 783 F. Supp at 494 (noting lenders may negotiate terms that allow them to oversee and protect their loans, and "[t]here is nothing unusual" about a lender taking a minority equity interest in a borrower or placing directors on its board). Although Evans, as a board member, had fiduciary duties to True, his appointment did not give rise to any fiduciary duties by Defendants.

Third, True asserts (again without further elaboration) that 1K1V TGJ, through assurances of future financing and other leverage tactics, "directed and controlled [True]," e.g., by firing a staff member, reducing management salaries, and increasing prices. Opp'n at 10. As alleged in the Complaint, however, *1K1V TGJ* did not take these actions based on any authority it held by virtue of the existing lender/borrower relationship. Rather, *True* took these actions in an attempt to secure additional financing from 1K1V TGJ. The Complaint thus alleges, at most, that 1K1V TGJ sought to take advantage of True's weakened bargaining position. Absent an existing fiduciary duty—which has not been shown—1K1V TGJ was free to do so (i.e., to pursue its own interests as a commercial lender in offering additional financing to True). Accordingly, Defendants' motion to dismiss True's claim for breach of fiduciary duty is granted.

---

[1] In its opposition brief, True asserts that the co-investment in Stormberg "necessitated the formation of a new entity – Stormberg Foods USA LLC – in which Plaintiff and Defendant were co-managing members." Opp'n at 10. This fact is not alleged in the Complaint, and thus, cannot be considered on a motion to dismiss. Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). Moreover, even setting this defect aside, it is not apparent how formation of this entity "elevated" the relationship between True and 1K1V TGJ beyond that of co-investors. Id.

### B. FRAUD

In its second claim for relief, True alleges fraudulent concealment and/or misrepresentation. Compl. ¶¶ 56-62. The Complaint alleges that, throughout the course of the parties' dealings, Defendants failed to disclose their true intention, which was not the continued vitality of the company, but rather, a hostile takeover. Id. ¶¶ 58-59. It is further alleged that Defendants "made the false promise of being a seed-capital investor and business partner while concealing their true intentions of a hostile takeover." Id. ¶ 59.

To state a claim for fraud, a party must allege: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996). Federal Rule of Civil Procedure 9(b) requires that a party state with particularly the circumstances constituting fraud. In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

As persuasively argued by Defendants, the Complaint fails to identify any actionable misrepresentation or omission. Regarding the allegation that Defendants promised to be a seed-capital investor, the Complaint admits this statement was true. Compl. ¶ 19 (alleging 1K1V TGJ "made a seed-capital investment of $900,000"), ¶ 20 (alleging 1K1V TGJ "made additional investments," for a total of $3 million, "to help fund [True's] growth"). True contends Defendants nonetheless committed fraud because they failed to disclose their "true intentions of a hostile takeover." This allegation is rooted in 1K1V TGJ's offer for further financing in early 2020 on terms True found objectionable. The Complaint admits, however, that Defendants fully disclosed the terms of that offer. True pleads no facts suggesting Defendants had a duty to disclose the terms at an earlier date. Nor do the facts alleged plausibly support the inference that Defendants planned a hostile takeover when they invested substantial sums between 2017 and 2019, let alone when they promised to become a seed-capital investor.

Tellingly, True does not attempt to refute Defendants' arguments as to the misrepresentations and/or omissions set forth above. Rather, True identifies new misrepresentations and/or omissions, as follows: (1) Defendants failed to disclose 1K1V Stormberg's second investment in Stormberg until after an agreement had been reached to issue additional equity; and (2) Defendants made "assurances" in the first quarter of 2020 that an additional market-rate investment in True would be forthcoming. Opp'n at 12-13. These newly advanced allegations still fail to state a claim.

With respect to the equity issuance, the Complaint admits that Stormberg (not Defendants) had a duty to provide notice of the same. Compl. ¶ 24. With respect to the "assurances" of an additional investment, True fails to allege with particularity any statement by Defendants that another loan would be made on specific terms (or on terms acceptable to True). As to the vague allegation of "assurances," the Complaint admits that a fifth loan proposal was made, id. ¶¶ 40-43, and True alleges no facts supporting an inference of falsity. Accordingly, the motion to dismiss True's fraud claim is granted.

    **C.**    **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

In its sixth claim for relief, True alleges tortious breach of the implied covenant of good faith and fair dealing. Compl. ¶¶ 84-91. True alleges Defendants prevented it from receiving the rights/benefits to which it was entitled under the Stormberg Operating Agreement, "including by depriving [True] of both its contractual right to notice of the proposed new equity securities issuance and the opportunity to exercise its preemptive rights with respect thereto, and further, by diluting and/or misappropriating [True's] ownership interest in [Stormberg]." Id. ¶ 87.

"A cause of action for tortious breach of the covenant of good faith and fair dealing requires the existence and breach of an enforceable contract as well as an independent tort." Innovative Bus. Partnerships, Inc. v. Inland Ctys. Reg'l Ctr., Inc., 194 Cal. App. 4th 623, 631-32 (citation omitted). Defendants move to dismiss this claim on the grounds that True does not allege either breach of the Operating Agreement or an independent tort committed by Defendants. As an initial matter, True does not address the issue of an independent tort

in its opposition brief. As noted by Defendants, True now appears to advance a contract claim for breach of the implied covenant of good faith and fair dealing, rather than the tort claim alleged in the Complaint. See Reply at 6. Even so, True fails to state a claim.

"The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's rights to receive the *benefits of the agreement actually made*." Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 349 (2000) (emphasis in original). "It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." Id. "As to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct. And if defendants were given the right to do what they did by the express provisions of the contract there can be no breach." Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc., 2 Cal. 4th 342, 374 (1992) (quotation marks and citation omitted).

True alleges that, by participating in the second equity securities issuance, Defendants diluted True's ownership interest in Stormberg. As True admits in its pleading, however, the Operating Agreement expressly permits the parties to participate in additional equity securities issuances by Stormberg. Compl. ¶ 24. Thus, the conduct complained of was permitted by contract and cannot give rise to a claim for breach of the implied covenant. Insofar as True also alleges that it was deprived of its contractual right to timely notice of the proposed equity securities issuance, the Complaint alleges Stormberg—not Defendants—were obligated to provide such notice. Id. The implied covenant cannot impose such a duty on Defendants. Accordingly, Defendants' motion to dismiss True's claim for breach of the implied covenant is granted.

    **D.**    **INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**

In its third and fourth claims for relief, True alleges intentional and negligent interference with prospective economic relations. Compl. ¶¶ 63-69, 70-76. Specifically, it alleges Defendants thwarted a potential investment from King's Hawaiian through "active manipulation of and directions to Dave Ev[a]ns to vote 'no' on the King's Hawaiian

proposal—thereby aiding and abetting Evan's own breach of fiduciary duties to [True]—and threatening both [True] and King's Hawaiian with legal action." Id. ¶ 66. True also alleges intentional interference with prospective economic relations in its fifth claim for relief. Compl. ¶¶ 77-83. True alleges Defendants engaged in acts designed to induce a breach and/or disruption of its contractual relationship with Stormberg by "depriving [True] of both its contractual right to notice of the proposed new equity securities issuance and the opportunity to exercise its preemptive rights with respect thereto, and further, by diluting and/or misappropriating [True's] ownership interest in [Stormberg]." Id. ¶ 81.

The elements of a claim for intentional interference with prospective economic relations are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) resulting damages. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003). To prevail on such a claim, a plaintiff also must plead and prove that the defendant's conduct was wrongful by some legal measure apart from the interference itself. Id. "An act is not independently wrongful merely because [the] defendant acted with an improper motive." Id. at 1158. Rather, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Id. at 1159. "The elements are the same for negligent interference although the plaintiff need only show that the defendant acted negligently." Prostar Wireless Grp., LLC v. Domino's Pizza, Inc., 360 F. Supp. 3d 994, 1015 (N.D. Cal. 2018), aff'd, 815 F. App'x 117 (9th Cir. 2020) (citing Venhaus v. Shultz, 155 Cal. App. 4th 1072, 1078-80 (2007)).

### 1.     Stormberg

Defendants move to dismiss True's claim of interference in its relationship with Stormberg on the ground that no independently wrongful act is alleged. True does not meaningfully address this issue in its opposition brief, but simply restates the allegations of the Complaint. Opp'n at 15 (citing Compl. ¶¶ 26-30). The thrust of those allegations is

that True's equity interest in Stormberg was diluted when 1K1V TGJ participated in a second round of investment. For the same reasons discussed above with respect to breach of the implied covenant of good faith and fair dealing, however, True fails to allege any independently wrongful act. True does not allege facts demonstrating that Defendants' second investment in Stormberg was tortious or otherwise unlawful. Nor does the fact that Defendants' investment had the effect of diluting True's equity interest in Stormberg render it wrongful. Indeed, as the Complaint makes evident, True had the right to participate in that second round of investment in Stormberg but lacked sufficient capital to do so. The motion to dismiss True's interference claim as to Stormberg therefore is granted.

### 2.     King's Hawaiian

Defendants also move to dismiss True's claims for intentional and negligent interference in its relationship with King's Hawaiian on the ground that no independently wrongful act is alleged. They argue that (a) the claim Evans breached his fiduciary duty to True is barred by California's business judgment rule and (b) the facts alleged do not support the inference Defendants aided and abetted any such breach of fiduciary duty.

Defendants are correct that the Complaint fails to allege sufficient facts to plead a claim of interference based on aiding and abetting a breach of fiduciary duty by Evans. See Berg & Berg Enters., LLC v. Boyle, 178 Cal. App. 4th 1020, 1045 (2009) (holding demurrer to claim for breach of fiduciary duty was properly sustained based on business judgment rule, which immunizes directors from liability for their management decisions; to overcome the presumption afforded by this rule, a plaintiff must allege sufficient facts to establish an exception, such as a conflict of interests or improper motive). The Complaint alleges *no facts* suggesting a conflict of interests or improper motive. Although it is alleged, on information and belief, that Defendants selected Evans because they believed he would protect their interests, there are no facts to support this assertion.

The above notwithstanding, the Complaint also alleges that Defendants threatened True and King's Hawaiian with litigation in an effort to sabotage the proposed investment. Defendants do not address this allegation in their motion to dismiss, and their attempt to do

so for the first time in their reply brief is improper. See In re Rains, 428 F.3d 893, 902 (9th Cir. 2005) (holding issue raised for the first time in a reply brief was waived). Although True appears to concede the deficiency of its allegations regarding aiding and abetting Evans' breach of fiduciary duty (by not responding to Defendants' arguments), it points to other alleged misconduct, in particular the threats of litigation, to support its claim. Opp'n at 15-16. Thus, Defendants have not shown that the Complaint fails to state a claim.[2]

Notably, even in its opposition brief, True continues to ignore the distinction between Evans (who is not a party to this action) and Defendants. See id. As rightly argued by Defendants elsewhere in their motion, True also fails to identify the harmful conduct of each named defendant. See Mot. at 21. A complaint that "lump[s] together … multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." Sebastian Brown Prods., LLC v. Muzooka, Inc., 143 F. Supp. 3d 1026, 1037 (N.D. Cal. 2015) (quotation marks and citations omitted). Accordingly, the motion to dismiss True's interference claims regarding King's Hawaiian is granted on the ground that True impermissibly lumps together the several defendants but is otherwise denied.

### E. DECLARATORY RELIEF

In its seventh claim for relief, True seeks a "declaratory judgment equitably subordinating all of Defendants' claims, liens, and/or security interests vis-à-vis [True] to a junior position." Compl. ¶ 93. As rightly asserted by Defendants, equitable subordination is not a viable claim for relief. See HBE Leasing Corp. v. Frank, 48 F.3d 623, 634 (2d Cir. 1995) ("Equitable subordination is distinctly a power of federal bankruptcy courts, as courts of equity, to subordinate the claims of one creditor to those of others."); e.g., Bank of New York Mellon v. Citibank, N.A., 8 Cal. App. 5th 935, 954 (2017) (explaining that,

---

[2] Defendants also argue that the claim is barred by the Shareholder's Agreement, which precludes liability by the parties or their affiliates for designating a member of True's board of directors or any act or omission of such director. Defendants do not request that the court take judicial notice of the Shareholder's Agreement, however; and the pertinent terms are not set forth in the Complaint. In any event, it does not appear this argument applies to the allegation that Defendants threatened True and King's Hawaiian with litigation, as those threats are not alleged to have been made by Evans.

although the doctrine of equitable subordination is codified in the Bankruptcy Code, the plaintiff cited no authority supporting its application outside bankruptcy proceedings). True does not respond to Defendants' argument, thereby conceding the merits of the motion to dismiss this claim. See Ramirez v. Ghilotti Bros. Inc., 941 F. Supp. 2d 1197, 1210 n.7 (N.D. Cal. 2013) (finding the plaintiff effectively conceded issues he neglected to respond to in his opposition brief); see also United States ex rel. Anita Silingo v. WellPoint, Inc., 904 F.3d 667, 681 (9th Cir. 2018) (holding the district court did not abuse its discretion in dismissing with prejudice a claim that the plaintiff "did not defend" in response to a motion to dismiss). The motion to dismiss this claim therefore is granted.

F. **PUNITIVE DAMAGES**

Finally, True seeks punitive damages in connection with each of its claims except the claim for declaratory relief. Compl. ¶¶ 55, 62, 69, 76, 83, 91. True alleges only legal conclusions in support of the same. See id. ("Defendants … engaged in conduct that was malicious, oppressive, despicable, and carried out with complete and utter disregard for the rights of [True]"). This is insufficient to support a claim for punitive damages. See Opperwall v. State Farm Fire & Cas. Co., No. 17-CV-07083-YGR, 2018 WL 1243085, at *5 (N.D. Cal. Mar. 9, 2018) (dismissing claim for punitive damages based on nothing more than conclusory allegations of oppression, fraud, and malice). Accordingly, Defendants' motion to dismiss True's claim for punitive damages is granted.

G. **LEAVE TO AMEND**

The first through sixth claims for relief, including True's request for punitive damages, may be saved by amendment and therefore are dismissed with leave to amend. See Malibu Textiles, Inc. v. Label Lane Int'l, Inc., 922 F.3d 946, 954 (9th Cir. 2019). Because equitable subordination is not a viable claim, the seventh claim for declaratory relief is dismissed without leave to amend.

IV. **CONCLUSION**

In view of the foregoing, IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is granted. The first through sixth claims for relief, as well as the request for

punitive damages, are dismissed with leave to amend.  The seventh claim for relief is dismissed without leave to amend.  True shall file a first amended complaint within 21 days of the date this order is issued.  No new parties or claims may be added without prior leave of the district court.

IT IS SO ORDERED.

Dated: 8/16/2022

_____ RS
Richard Seeborg for Saundra B. Armstrong
United States District Court