UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUE GENTLEMEN'S JERKY, INC., <br><br> Plaintiff, <br><br> v. <br><br> 1K1V TGJ HOLDINGS, LLC, et al., <br><br> Defendants. | Case No. 21-cv-04073-VC <br><br> **ORDER DENYING MOTION TO DISMISS** <br><br> Re: Dkt. No. 42 |

The motion to dismiss is denied as to the claims for interference with prospective economic relations against 1K1V and Hendrik Jordaan. This order assumes the reader's familiarity with the facts of the case, the arguments made by the parties, and the relevant law.[1]

True has adequately stated claims for intentional and negligent interference with prospective economic relations based on the theory that 1K1V and Jordaan aided and abetted Evans in breaching his fiduciary duty to True. In her papers and at the hearing, counsel for the defendants tried to characterize True's conflict-of-interest and improper-motive allegations as amounting only to the claims that 1K1V appointed Evans to True's board and that Jordaan and Evans allegedly have a personal, friendly relationship. Counsel is correct that, under California law, these kinds of allegations cannot overcome the business judgment rule. *See Apple Inc. v. Superior Court*, 18 Cal. App. 5th 222, 254 (2017); *Bader v. Anderson*, 179 Cal. App. 4th 775,

---

[1] Although One Thousand and One Voices is identified in the caption as a defendant, the complaint does not direct any allegations against that specific defendant, nor does True press any arguments specific to that defendant in response to the motion to dismiss. Therefore, One Thousand and One Voices is dismissed without leave to amend. If discovery against the remaining defendants reveals a basis for asserting these claims against One Thousand and One Voices, True may seek leave to file an amended complaint at that time.

792 (2009). But True alleges much more than that, and its allegations must be taken together, not in isolation.[2]

True alleges that Evans initially voted to reject 1K1V's offer, along with every other board member, describing it as "[b]rutal, really brutal" and "last resort capital." Dkt. No. 39 at 9. By contrast, Evans described King Hawaiian's offer as a "very good offer" in True's "best interests." Dkt. No. 39 at 11. Five weeks after the initial rejection of 1K1V's offer, 1K1V resubmitted its offer with allegedly no material changes, having changed only in that it contemplated "a reduction in 1K1V Board members from 5 to 3, [which would still give] 1K1V … a 3/5 board majority." Dkt. No. 39 at 12. Despite having rejected it five weeks earlier, Evans abstained from voting this time, allegedly describing himself as "the 1K1V director" and explaining it would thus be inappropriate for him to vote. Dkt. No. 12–13. Evans then voted to reject King Hawaiian's offer, which every other board member voted in favor of, explaining he would not vote in favor of it unless they got 1K1V on board. Dkt. No. 12–13.

That a board member believes it important to consider the interests of a company's largest shareholder when making financing decisions does not in and of itself evince a conflict of interest or an improper motive. But it is the about-face and the sudden parroting of 1K1V's hyperbolic characterization of King Hawaiian's offer that plausibly give rise to the inference of improper motive or conflict of interest. True alleges that from the time the King Hawaiian offer was made until it was rejected, 1K1V and Jordaan forcefully campaigned to have the offer rejected, denigrating its terms as "bogus" and questioning its legitimacy. *See, e.g.*, Dkt. Nos. 39 at 12, 42-9 at 3. When the board convened for a second vote on the King Hawaiian offer a few

---

[2] Technically, this ruling adjudicates only the claim against 1K1V and Jordaan for aiding and abetting Evans's alleged breach; it does not adjudicate the claim directly against Evans for breach of fiduciary duty. That is because Evans has not yet been properly served. At the hearing, the Court gave True an additional eight weeks to serve Evans, assuming Evans does not authorize his counsel to accept service on his behalf. But because Evans appeared at the hearing through counsel (the same counsel who represents 1K1V and Jordaan), and because Evans filed a joinder in 1K1V and Jordaan's motion to dismiss, it is appropriate to decide at this time the question whether True has adequately alleged a breach by Evans that would support a claim for aiding and abetting against 1K1V and Jordaan.

days after the first, Evans—who had initially praised the offer—now allegedly disparaged it as "a setup…through naivete or complicity" and "very bad faith." Dkt. No. 39 at 13. Combined with the allegation that 1K1V threatened Evans's board seat if he did not vote to reject the King Hawaiian offer, these allegations are sufficient to suggest that 1K1V and Jordaan aided and abetted Evans in breaching his fiduciary duty to True.[3]

True has also adequately stated interference claims based on the letter sent by 1K1V's counsel to King Hawaiian. The letter accuses True of being in default on its promissory notes, which True alleges is false, and it also (at least arguably) threatens litigation. It may be that the threat-of-litigation theory is barred by the *Noerr-Pennington* doctrine, because True does not quite allege that 1K1V's threats were of sham litigation and thus unworthy of First Amendment protection. *See Rock River Communications, Inc. v. Universal Music Group, Inc.*, 745 F.3d 343, 351 (9th Cir. 2014). But True has plausibly alleged interference based on the letter insofar as it falsely accused True of being in default.

The defendants argue that True has failed to adequately allege causation because, by the time King Hawaiian allegedly rescinded its offer due to 1K1V's conduct, True's board had already rejected it. But it is (at least) plausible that the defendants' interference stymied further negotiations that would have taken place between True and King Hawaiian, notwithstanding the rejection of the initial term sheet. King Hawaiian's email to True conveys that "many aspects of [True's] business…are encouraging and would likely have led to the successful completion of our investment exactly *or nearly exactly* as outlined in our term sheet." Dkt. No. 47-3 at 3 (emphasis added). This evinces King Hawaiian's willingness to negotiate the terms of its offer, suggesting that True's rejection of the initial terms would not have immediately ended the relationship. The allegations in the complaint regarding 1K1V's willingness to return with a

---

[3] 1K1V's argument that this claim is barred by the disclaimer of liability in the Shareholders' Agreement is not persuasive. That disclaimer shields 1K1V and its affiliates from liability based on "any act or omission by [a person designated for election as a director] in his or her capacity as a director of the Company." Dkt. No. 42-3 at 4. But a claim for aiding and abetting holds a party responsible for its own actions, not the actions of another, and so it would not seem to be captured by this provision.

modified offer after True's rejection of its first offer likewise suggest that this type of back and forth is common practice in business.

Counsel for the defendants argued at the hearing that it would be speculative to infer that further negotiations would have occurred. But it would be at least as speculative (if not more so) to infer that they wouldn't have, given the allegations just described. Drawing all reasonable inferences in True's favor, True has adequately alleged causation.

An answer from 1K1V and Jordaan is due 14 days from this order.

**IT IS SO ORDERED.**

Dated: March 7, 2023

_____
VINCE CHHABRIA
United States District Judge